RAYMOND McCASKILL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LEE AND LOUISE McCASKILL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9950–79, 9951–79.     Filed September 24, 1981.

*Stanley R. Kirk*, for the petitioners.
*Larry D. Anderson*, for the respondent.

FEATHERSTON, *Judge*: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax:

Docket No. 9950–79 (Raymond McCaskill)

| Year | Deficiency | Additions to the tax | |
|------|-----------|---------------------|---------------------|
| | | Sec. 6651(a)[1] | Sec. 6653(a) |
| 1974 | $7,234.72 | $1,229.10 | $361.74 |
| 1975 | 9,613.43 | 517.48 | 480.67 |
| 1976 | 12,413.24 | 2,127.92 | 620.66 |
| 1977 | 16,363.75 | 4,090.94 | 818.19 |

Docket No. 9951–79 (Lee and Louise McCaskill)

| Year | Deficiency | Additions to the tax | |
|------|-----------|---------------------|---------------------|
| | | Sec. 6651(a) | Sec. 6653(a) |
| 1974 | $4,328.00 | $661.00 | $216.40 |
| 1975 | 7,081.35 | 150.25 | 354.07 |
| 1976 | 6,963.98 | 1,141.78 | 348.20 |
| 1977 | 4,964.50 | 1,241.12 | 248.22 |

Concessions having been made by the parties, the issues remaining for decision are:

(1) Whether petitioners Lee and Louise McCaskill are entitled to itemized deductions for the years 1974 through 1977 in excess of the amounts allowed by respondent;

(2) Whether petitioner Raymond McCaskill is entitled under section 152(e)(2) to an exemption deduction for his daughter in 1976;

(3) Whether petitioner Raymond McCaskill is eligible under sections 1301 through 1305 for income averaging in 1974;

(4) Whether petitioners are liable under section 6651(a) for delinquency additions to tax on the theory that the Forms 1040 filed by them do not qualify as returns;

(5) Whether the time for filing petitioners Lee and Louise McCaskill's 1974 income tax return was extended past June 17, 1975;

(6) Whether petitioners are liable for additions to tax under section 6653(a).

### FINDINGS OF FACT

Petitioners Lee and Louise McCaskill (Lee and Louise), husband and wife, filed Forms 1040, marked "married filing jointly," for 1974 through 1977 with the Internal Revenue

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Service Center, Cincinnati, Ohio. Petitioner Raymond McCaskill (Raymond) also filed Forms 1040 for the years 1974 through 1977 with the same Service Center. Petitioners were legal residents of Detroit, Mich., when they filed their petitions.

## The Forms 1040 Filed by Raymond

Raymond was divorced from his wife on February 25, 1972, and had not remarried by 1977. His daughter, age 15 at the time of trial, resided with his former wife.

Raymond's 1974 Form 1040 was filed with respondent on July 2, 1975. Respondent had granted Raymond an extension of the filing deadline to October 15, 1975. The Form 1040 was accompanied by Schedules C (profit or loss from business or profession), G (income averaging), and SE (computation of social security self-employment tax). Raymond's sole income was listed as "Business income." On Schedule C, this income was listed as both gross income (with "All costs" typed in on the line for gross income) and net income, with no deductible expenses listed. The tax due ($5,904) was computed from Schedule G, and payment of that amount accompanied the form. Neither Raymond's occupation nor the nature of his business was indicated.

Raymond's 1975 Form 1040 was filed on April 15, 1976. Schedule SE (self-employment tax) accompanied the form. Raymond's reported income was listed on both Schedule SE and in other appropriate places in the form as "Other." Raymond described the nature and source of the income as merely "Income." Raymond gave his occupation as "Self-Employed." Full payment of the taxes reflected as due ($7,843.62) accompanied the form.

Raymond's 1976 Form 1040 was filed on July 14, 1977, accompanied by payment of all taxes indicated therein ($9,753.92). The time for filing had been extended to June 19, 1977. The 1976 form was completed in the same manner as the 1975 form except that the space for describing the nature and source of the income was left blank.

Raymond's 1977 Form 1040 was filed on April 15, 1978. The amount of taxes indicated as due ($13,736.95) was paid in four installments, with the first payment of $7,000 being made on August 25, 1979. This form was completed in the same manner

as the 1976 form. In addition, the form was accompanied by Schedule TC (tax computation).

## The Forms 1040 Filed by Lee and Louise

Lee and Louise filed their 1974 Form 1040 on July 3, 1975, accompanied by the payment of the taxes. Respondent had extended the time for filing until June 17, 1975. Although petitioners requested another extension, the record fails to indicate whether it was granted. The Form 1040 and Schedule C were completed in the same manner as those filed by Raymond in 1974. Lee and Louise also included Schedules A and B (itemized deductions).

Lee and Louise filed their 1975 Form 1040, accompanied by payment of the taxes indicated thereon ($6,480.75) on April 15, 1976. This form was completed in the same manner as Raymond's 1975 Form 1040. Lee and Louise also reported supplemental income of $600. Although they filed Schedules A and B, they did not file Schedule E (supplemental income).

Lee and Louise filed their 1976 Form 1040 on June 30, 1977. The time for filing had been extended to June 7, 1977. Their 1976 form was completed in the same manner as their 1975 Form 1040 except that no description of their income was provided. In addition, Lee and Louise included Schedule E which reflected $600 of supplemental rental income. Payment of the taxes indicated as due ($5,992.15) accompanied the return.

Lee and Louise filed their 1977 Form 1040 on October 16, 1978. The time for filing had been extended to October 15, 1978, which was a Sunday. This return was completed in the same manner as the 1976 form except no supplemental income was reported. The amount of tax indicated as due ($4,252.50) was paid on January 8, 1979.

The income taxes reported by petitioners on their several Forms 1040 and paid in the manner set forth above were assessed by the Internal Revenue Service, and the payments of the amounts reported due on the returns were accepted and treated as payment of the taxes. Nonetheless, by notices of deficiency dated April 13, 1979, respondent determined that the forms filed by petitioners did not constitute tax returns according to the requirements of section 6011(a) and the regulations thereunder and that petitioners were, therefore,

liable for additions to tax under section 6651(a). The amounts of income determined in the notices of deficiency are the same as the amounts reported in the respective income tax returns. Respondent also determined that Raymond was not entitled to an exemption deduction for his daughter, and that he was ineligible for income averaging.

Respondent further determined that Lee and Louise had not established that they were entitled to the itemized deductions which they claimed for the years in issue.

Respondent computed the section 6651(a) additions to tax for failure to file returns in the following manner:

Raymond McCaskill

| Failure to file (sec. 6651(a)): | 1974 | 1975 | 1976 | 1977 |
|---|---|---|---|---|
| $5,795.75 X 15% | $869.36 | | | |
| 1,438.97 X 25% | 359.74 | | | |
| 2,069.91 X 25% | | $517.48 | | |
| 9,753.92 X 15% | | | $1,463.09 | |
| 2,659.32 X 25% | | | 664.83 | |
| 16,363.75 X 25% | | | | $4,090.94 |
| Totals | 1,229.10 | 517.48 | 2,127.92 | 4,090.94 |

Lee and Louise McCaskill

| Failure to file (sec. 6651(a)): | 1974 | 1975 | 1976 | 1977 |
|---|---|---|---|---|
| $4,210.00 X 15% | $631.50 | | | |
| 118.00 X 25% | 29.50 | | | |
| 601.00 X 25&. | | $150.25 | | |
| 5,992.15 X 15% | | | $898.82 | |
| 971.83 X 25% | | | 242.96 | |
| 4,964.50 X 25% | | | | $1,241.12 |
| Totals | 661.00 | 150.25 | 1,141.78 | 1,241.12 |

The pleadings raise no issue with respect to the timeliness of the notice of deficiency for any of the years in issue.

## OPINION

### 1. Itemized Deductions

Respondent has conceded in a supplemental stipulation of facts that petitioners Lee and Louise are entitled to certain itemized deductions for each of the years 1974 through 1977. Lee and Louise have not, however, introduced any evidence supporting their allegation that respondent erroneously disallowed other claimed deductions. Thus, Lee and Louise are not entitled to any itemized deductions in excess of the ones allowed or conceded by respondent. *Welch v. Helvering,* 290

U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

## 2. Dependency Exemption

Respondent has conceded by stipulation that Raymond is entitled to an exemption deduction for his daughter Sabrina for 1974, 1975, and 1977. The parties dispute, however, whether Raymond·may claim an exemption for his daughter for 1976. Because his daughter was living with his former wife in that year, petitioner must show that he satisfied the special rules of section 152(e)(2)[2] regarding provision of support. At trial, petitioner's testimony was vague and somewhat contradictory as to whether he made the required support payments ($1,200 or more) during the year 1976. Further, petitioner has introduced no other evidence of payments, such as canceled checks, to support his claim for the exemption. Consequently, we must sustain respondent's determination that Raymond has failed to prove that he provided his daughter with the requisite support to claim an exemption deduction for her for 1976.

## 3. Income Averaging

Under sections 1301 through 1305, a taxpayer is entitled to

---

[2]Sec. 152(e)(2) provides:

SEC. 152(e). SUPPORT TEST IN CASE OF CHILD OF DIVORCED PARENTS, ET CETERA.—

    \*        \*        \*        \*        \*        \*        \*

(2) SPECIAL RULE.—The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if—

(A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and

(ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or

(B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and

(ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.

For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support.

income averaging if his taxable income in the year in which averaging is elected (computation year) exceeds 120 percent of his average taxable income in the 4 preceding years (base period income). In making this comparison, the taxpayer must use the actual taxable income for the 4 preceding years, not merely the amount of income reported. *Unser v. Commissioner*, 59 T.C. 528, 530 (1973).

Respondent observes that the 1970 through 1973 Forms 1040 introduced by Raymond to show his base period income were completed in a manner similar to the Form 1040 for 1974. Respondent contends that the 1970–73 forms[3] are inadequate to enable respondent to ascertain their correctness and therefore concludes that those returns are insufficient to establish Raymond's base period income. We disagree.

In the absence of evidence to the contrary, the net income figures reflected by Raymond's Forms 1040 for the years 1970 through 1973 are deemed to accurately show his base period income. Respondent has not determined in the notice of deficiency that Raymond's base period income is different from that reported; nor has he determined or here contended that the income as reported was incorrect. Cf. *Unser v. Commissioner, supra* at 530. Because there is no evidence, determination, or contention that the income reported on Raymond's returns for the base period years was erroneous, we do not think that the omission of certain information on those returns requires that we disregard them for the purposes of income averaging. For the reasons we shall discuss more fully in connection with issue 4, *infra*, we think the returns for 1970 through 1973 are "returns" within the meaning of sections 1301 through 1305, the income averaging provisions. Hence, we hold that Raymond has shown his base period income and that he is entitled to income average in 1974.

---

[3]With Raymond's Form 1040 for 1970, he reported in Schedule E gross income from self-employment with no deductions. In his Forms 1040 for 1971 and 1972, he included Schedule C on which he showed income, deductions for automobile expenses, and a net profit. In his Form 1040 for 1973 he included Schedule C in which he showed his gross income preceded by the words "All costs" and a figure for net profits.

## 4. *Late Filing Additions to Tax*

Section 6651(a)(1)[4] provides that a taxpayer who fails to file a timely return is liable, for each month the return is overdue, for an addition to tax of 5 percent of the amount required to be shown as tax on the return. The addition to tax is limited to a maximum of 25 percent. The addition will not be applied if the taxpayer shows that the tardiness was due to reasonable cause and not willful neglect.

Respondent contends that the Forms 1040 are incomplete because, according to respondent, petitioners merely reported in the Schedules C a net income figure and therefore the forms are not returns within the meaning of section 6011(a).[5] Accordingly, respondent concludes that petitioners have failed to file returns and thus are liable for the late filing addition to tax.

Petitioners maintain that they reported the full amount of their income and, indeed, respondent has not determined otherwise. They argue that the information sought by respondent concerns the source, not the amount, of their income. Petitioners have claimed Fifth Amendment protection with regard to the source of their income.[6]

It is often stated that a document constitutes a valid tax return if "it contains sufficient data from which respondent

---

[4]SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

[5]Sec. 6011(a) provides:

(a) GENERAL RULE.—When required by regulations prescribed by the Secretary or his delegate any person made liable for any tax imposed by this title, or for the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary or his delegate. Every person required to make a return or statement shall include therein the information required by such forms or regulations.

[6]Petitioners also argue that although respondent's counsel had been informed that petitioners would invoke the Fifth Amendment on questions regarding the nature of their business, he nevertheless asked such questions, and, therefore, a mistrial should be declared with regard to Raymond. There is no merit, however, to this argument. It was petitioner's own counsel on direct examination who elicited the first Fifth Amendment response by inquiring about the nature of Raymond's occupation.

can compute and assess a tax liability." *White v. Commissioner*, 72 T.C. 1126, 1129 (1979); *Durovic v. Commissioner*, 54 T.C. 1364, 1388 (1970). Accord, *Commissioner v. Lane-Wells, Co.*, 321 U.S. 219 (1944); *United States v. Smith*, 618 F.2d 280 (5th Cir. 1980); *United States v. Long*, 618 F.2d 74 (9th Cir. 1980); *United States v. Edelson*, 604 F.2d 232 (3d Cir. 1979); *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970). Thus, it has been held that valid returns were not filed where the taxpayer filed (1) a blank Form 1040 except for name, address, and social security number (see, e.g., *White v. Commissioner, supra* at 1129–1130; *Cupp v. Commissioner*, 65 T.C. 68, 79 (1975)); (2) a blank Form 1040 containing only identifying information and constitutional or other objections to filing or paying taxes (see, e.g., *United States v. Johnson*, 577 F.2d 1304, 1310–1311 (5th Cir. 1978); *United States v. Porth, supra* at 522–523; *Hatfield v. Commissioner*, 68 T.C. 895, 898 (1977)); (3) a Form 1040 labeled "tentative" or "estimated" (see, e.g., *Ferrando v. United States*, 245 F.2d 582, 588 (9th Cir. 1957); *National Contracting Co. v. Commissioner*, 105 F.2d 488, 491 (8th Cir. 1939)); (4) a Form 1040 containing zeros in all relevant spaces (see, e.g., *United States v. Smith, supra* at 281–282; but see *United States v. Long, supra* at 75–76); or (5) a tentative or "skeleton" Form 1040 containing either identifying information only and tax due or net income and tax due (see, e.g., *Schroeder v. Commissioner*, 291 F.2d 649, 654 (8th Cir. 1961); *Sanders v. Commissioner*, 225 F.2d 629, 637 (10th Cir. 1955), cert. denied 350 U.S. 967 (1956)).

Respondent has cited many of the above cases and others containing similar facts to support his position. It is clear, however, that none of those cases is analogous to the instant case. In contrast to those cases and as indicated by our findings of fact, far more information was included here on the forms filed. Petitioners filed schedules for itemized deductions, income averaging (in one return), business income, supplementary income, and included income and self-employment tax computations.

Indeed, with respect to petitioners' 1974 returns, the only omitted information identified by respondent was business deductions which, ordinarily, would be shown in Schedule C (business income). Implicitly, however, the deductions were reported to be zero because petitioners listed the same figure

as both gross and net income. Many taxpayers, if they are not claiming a particular kind of deduction, do not insert a zero in the space provided for that deduction but simply leave the space blank. That is what petitioners did here. We know of no regulation which states that failure to insert a zero or some other figure in each blank will render a Form 1040 a nullity. With regard to the remaining tax years (1975, 1976, and 1977), the returns were similar except that petitioners' income was described as "other" rather than "business income." We cannot say that the failure to fill out Schedule C for those years rendered the Forms 1040 ineffective as returns.

We agree with respondent that petitioners have failed to indicate the nature and source of their income. Nevertheless, we do not agree that they thereby failed to file a return within the meaning of section 6011. Cf. *United States v. Sullivan*, 274 U.S. 259, 263–264 (1927). Clearly, the returns as filed contain sufficient information for respondent to make a computation of petitioners' income tax liability. See *White v. Commissioner*, *supra.* Therefore, the Forms 1040 are valid returns for the purposes of section 6011.[7]

We do not here attempt to draw a bright line for dividing acceptable from unacceptable Forms 1040 or to specify how much information must be included on a Form 1040 to cause it to be acceptable as a return. It is clear that a Form 1040 containing no information in the blanks provided for the taxpayer's income and deductions is not a return. E.g., *United States v. Porth, supra*; *United States v. Smith, supra.* Similarly, an unverified Form 1040 containing obviously incomplete information will not suffice. "In our self-reporting tax system the government should not be forced to accept a document

---

[7]Nothing in *United States v. Sullivan*, 274 U.S. 259, 263 (1927), nor *Garner v. United States*, 424 U.S. 648, 650–653 (1976), dealing with the Fifth Amendment privilege against self-incrimination, dilutes a taxpayer's obligation to file a return reporting his income. Because of our holding, we do not need to decide whether petitioners properly invoked the privilege, or whether they waived it by taking the stand to testify or by filing Forms 1040 which did not mention the self-incrimination claims. In addition, we note that we have neither relied upon nor considered petitioners' limited testimony concerning the computation of their income and the operation of their businesses. We point out that the amount of petitioners' income is not in dispute. The notice of deficiency determined that petitioners had income in the amounts reflected in the Forms 1040 which they filed. Thus, we are not faced with the issue of whether, if the amounts of income were in dispute, the refusal to answer certain questions on the basis of the Fifth Amendment privilege claims would have resulted in petitioners' failure to carry their burden of proof.

which plainly is not intended to give the required information." *United States v. Moore*, 627 F.2d 830 (7th Cir. 1980). But in the instant case, the Forms 1040 contained much more information than in any case we have found in which a Form 1040 was not accepted as a return. Indeed, respondent treated the Forms 1040 filed by petitioners as returns, assessed the amount of the taxes shown thereon, and accepted the accompanying payments as taxes. Not until April 13, 1979, did respondent issue the notices of deficiency determining that the Forms 1040 filed by petitioners for 1974, 1975, 1976, and 1977 were not income tax returns. And the notices of deficiency then issued determined that petitioners had income in precisely the amounts shown on the Forms 1040.

We do not think that the late filing addition imposed by section 6651(a) can be applied in the manner sought by respondent in this case. Respondent has other methods of ascertaining the nature and source of taxpayers' income without extending the late filing addition to tax provision beyond its intended scope. Respondent also has specific statutory authority for obtaining access to information needed to determine a taxpayer's income. E.g., sec. 7602(2).

Our finding that petitioners filed valid returns does not, however, mean that petitioners are not subject to any late filing additions. For the years in which the returns were filed late, the late filing addition to tax must be imposed. Petitioners are not liable for the late filing addition to tax for any of the other years in issue.

Lee and Louise were granted an extension of time to June 17, 1975, in which to file their 1974 return. Although the return was not filed until July 3, 1975, petitioners argue that they requested, and received, another extension. Petitioners, however, have failed to introduce any evidence showing that the request was granted.[8] Petitioners also have failed to show that the delay in filing after the extension had expired was due to reasonable cause and not due to willful neglect. Consequently, they are liable under section 6651(a) for a 1-month late filing addition for the year 1974. The 5-percent addition for

---

[8]Lee testified that, to the best of his recollection, the request for extension was filed with the return. The return was not filed until July 3, 1975, or over 2 weeks after the prior extension had ended.

that year is to be applied to the amount of tax owed for that year. Sec. 6651(a).

Lee and Louise filed their 1976 return on June 30, 1977, although an extension had been granted only until June 7, 1977. Because petitioners have failed to show this tardiness was due to reasonable cause, they are liable for a 1-month, 5-percent late filing addition for the year 1976 to be applied to the amount of the tax due for that year.

Raymond's 1976 return was also filed about 24 days after the extension had expired. Accordingly, in the absence of a showing of reasonable cause, Raymond is likewise liable for a 5-percent, 1-month late filing addition for the year 1976, applied to the tax due for that year.

## 5. Negligence Addition to Tax

Section 6653(a)[9] provides for a 5-percent addition to tax if any part of the underpayment of tax is due to negligence or intentional disregard of the rules and regulations. The only underpayments of tax, as we view the evidence, resulted from Raymond's erroneously claiming an exemption for 1976, and Lee's and Louise's claiming unsubstantiated itemized deductions for each of the years in issue. We do not think these underpayments resulted from negligence. Indeed, respondent has asserted the negligence addition solely because of petitioners' lack of business records and incomplete returns, but he has neither determined, nor do we think the evidence shows, that any underpayments were due to such lack of records. We have held that petitioners filed valid returns. Thus, petitioners are not liable for the negligence addition to tax.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

---

[9]SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.